## LAWSON D. FRANKLIN v. ELIZABETH BEATTY.

The contract of a *feme covert* is void by the common law; but it is not void to all intents and purposes. It may be founded upon a good and valid consideration, entitling it in all but its form, to the favorable consideration of a court of justice. *Frost* v. *Doyle*, 7 S & M. 68, cited, confirmed, and explained.

In the form in which such a contract stands, it cannot be enforced, but the good and valuable consideration for which it was given, creates a moral obligation which will support a new promise founded on it, made by her after she becomes a *feme sole*.

The act of the 15th of February, 1839, (Hutch. Co. 496,) does not place a promissory note, executed by a *feme covert*, in a worse condition for the holder, than it was at common law. It is only incapable in that form of being enforced against her separate property.

At common law a *feme covert* could change the form of the obligation after the removal of her disability of coverture, and the antecedent valid consideration would support a new promise. So under the act of 1839, her note is not void to all intents and purposes; and that act prescribes the mode in which she may charge or convey her separate estate.

A *feme covert* has the same power under the act of 1839, by deed executed jointly with her husband, to make her previous contracts valid and available according to that act, that she would have at common law to make a new promise, after the death of her husband, to pay a debt contracted during coverture. *Bacon* v. *Sessions*, 23 Miss. 272, cited and confirmed.

The contracts of a *feme covert* founded on a just and equitable consideration received by her, should be enforced, if made in the manner prescribed by the statute : — *Held*, that the *feme covert* in this case having contracted the debts for which the mortgage was made, on account of her separate property, the contracts are valid and can be enforced.

In error from the circuit court of Holmes county ; Hon. Robert C. Perry, judge.

The facts of the case are contained in the opinion of the court.

*W. Brooke* for appellant.

The ability of a *feme covert* possessed of a separate estate to make a contract and incur a liability binding on that estate in equity, has long been well settled. In Clancy, on Rights of Married Women, the doctrine is thus stated : " In the preceding chapters an attempt has been made to explain and elucidate the rule that a *feme covert*, acting with respect to her separate property, is competent to act in all respects as if she were a *feme sole*, and all the cases seem to concur in affixing this meaning to it, that whenever a married woman acquires property to her separate use, exclusive of her husband, she may deal with it as she pleases, and exercise over it every right which she could possess if unmarried." Ch. 9, p. 331, 345. In the cases there cited, namely, *Hulme* v. *Tenant, Bulpin* v. *Clarke*, &c., the only difficulty was as to the mode in which the *femes covert* had bound themselves, whether a general engagement would be binding, or only when reduced to writing, or a special lien or charge in writing given on the estate.

In 2 Story's Equity, 767, § 1397, it is stated in reference to this question, " At law she (*feme covert*) is, during the coverture, generally incapable of entering into any valid contract to bind either her person or estate. In equity, also, it is now clearly established that she cannot, by contract, bind her person or her property generally. The only remedy allowed will be against her separate property."

" The reason of this distinction between her separate property and her other property is, that as to the former she is

treated as a *feme sole ;* but as to the latter, all the legal disabil-
ities of a *feme covert* attach to her." Story's Eq. 770, 771, 772,
1400, 778.

The case at bar under demurrer comes fully within the rule
as above laid down. Here was not only the giving of a note
which, according to those authors and the cases by them cited,
was a manifestation of an intention to charge her separate
estate, but the execution of a mortgage, the intention of which
is unmistakable.

The rule cited on the other side from Clancy, p. 23, and from
Story on Promissory Notes, p. 203, refer only to the capacity of
married women at law. Clancy is not then treating of *femes
covert* with separate estates, but simply stating in a general
way the effects of the marriage relation. So in Story, for by
reference to page 88, section 85, Story on Promissory Notes, it
will be seen that he refers to the exceptions which equity makes
from the common law rule. See note 3, same page, where the
authorities are all stated in support of the rule as laid down.

The case of *Davis* v. *Foy*, 7 S. & M., was a note sued on at
law in the circuit court, and Judge Clayton states the rule and
principle of the common law. In the case cited by him from
6 T. R. 604, the court says, " a court of law cannot get at the
property of the wife, if she have any." The inference is plain
that a court of equity can. The case of *Frost* v. *Doyle*, same
volume, was decided on the ground that the property of Mrs.
Doyle was not bound, because she had not conveyed or incum-
bered it in the mode pointed out by the statute known as the
woman's law. Judge Sharkey, in his opinion in this case, dis-
tinctly admits the existence of the rule, that as to her separate
estate, a *feme covert* can act as a *feme sole ;* but states that the
rule has been limited by the statute referred to, so far as to re-
quire the *feme covert* to convey or incumber it in a particular
way. 7 S. & M. 75. Now in the case at bar, the statute has
been literally complied with, as Mrs. Beatty joined in the mort-
gage, and the same was acknowledged by her separately and
apart from her said husband.

The case of *Berry* v. *Bland*, 7 S. & M. 83, also recognizes the
ability of a married woman to bind herself in equity by note,.

Franklin *v.* Beatty.

in the language of the court, "either as principal or as surety for her husband, or jointly with him." In this case, Mrs. Bland was released from her engagement (a forthcoming bond), because she had not bound her property in the way prescribed by our statute.

In the case of *Fish* v. *James*, 9 S. & M. 152, the power of the wife to bind her separate estate by mortgage is admitted, unless she is prohibited by the settlement or deed under which she claims. In *Doty* v. *Mitchell*, 9 S. & M., the case turned on the deed of settlement, the mode of disposition being therein prescribed, and the court held that the wife could convey in no other manner. In the case now at bar, no deed of settlement is set out showing the extent or limit of the powers of the wife; it is simply stated that she held property separate and apart from her husband; that the note was given in reference to this property, and subsequently secured by mortgage. The intention to charge the estate is distinctly charged and admitted by the demurrer.

It cannot be doubted that, under the woman's law, a *feme covert* can, jointly with her husband, convey or mortgage her estate, provided the conveyance be made in the prescribed mode. Mrs. Beatty, according to the bill, became indebted on account of her separate estate, and to secure this indebtedness, executed the mortgage in conformity with the statute; whether the mortgage was or was not executed at the moment the indebtedness accrued, is immaterial.

A reversal of the decree, dismissing the bill in the court below, is respectfully requested.

*J. M. Dyer* for appellee.

In Clancy on the Rights of Married Women, p. 23, it is laid down, that "the contract of a married woman is absolutely void; it binds neither herself nor her husband, without his assent."

In 2 Kent (3d ed.), 167, 168, it is said, that "the agreement of a *feme covert*, without the assent of her husband, for the sale of real estate, is absolutely void at law, and the courts of equity never enforce such a contract against her."

Franklin v. Beatty.

In *Davis* v. *Foy*, 7 S. & M. 64, this court has declared, "that it is well settled, that the contract of a married woman is void; and the act of 1839, known as the woman's law, does not extend her power of contracting or of binding herself, or her property, except in a particular way." The note in question was not made in that "particular way." To say that a married woman can make any kind of a contract, a contract by herself, would be to give her unlimited control over her property, and make her, so far as it is concerned, a *feme sole*. This certainly was not designed by the act referred to.

The case of *Frost* v. *Doyle*, 7 S. & M. 68, is directly in point. There a bill was filed to subject the separate property of a married woman for her separate debt. The bill was dismissed, on the ground that she could not incumber her property, except by strict compliance with the statute.

"A married woman's deed is a nullity." Smede, Dig. 279, § 3. If her deed is a nullity, her note must be, because it is presumed to be made with less deliberation and solemnity. It is stated by the bill that Mrs. Beatty was a married woman when she executed the notes; if so, the authorities cited above show that they are null and void.

A contract that is void from public policy, or from an illegal or immoral consideration, or by positive law, is the same. It in neither case creates any obligation, and admits of no confirmation; and a contract that is void at law, is equally so in equity; equity follows the law. To say a contract is a nullity in one tribunal, yet binding in another, seems to me an absurdity; such a rule would lead to confusion and mischievous consequences. If such a rule exists, the case of *Frost* v. *Doyle*, 7 S. & M. 68, was a proper one to apply it in, for that was in equity, and an attempt to reach the separate property of a married woman for necessaries furnished her; but the court dismissed the bill, and refused to grant the complainant any relief. If a wife's property will not be made liable for necessaries, surely it cannot be for an ordinary debt, which she had no power to contract.

In *Collins* v. *McCargo*, 6 S. & M. 128, this court says, that "the original contract being void, no valid agreement could be

made to rest upon the same consideration. They are all void, so long as they can be traced back and made to depend upon the original illegal consideration." The note in the case at bar being void, and the mortgage "resting upon" it being made twelve months after it, and being but a mere incident to it, it must also be void, according to the authority last cited. The mortgage must be traced back to the note; that is its foundation; without that it has nothing to uphold it, and that being a nullity, the mortgage must fall with it.

" The general rule is, that whenever any contract or conveyance is void, either by positive law or upon principles of public policy, it is deemed incapable of confirmation." 1 Story, Eq. Jur. 303, § 307. Mrs. Beatty's note is a contract of that character.

I think the case of *Adams et al.* v. *Rowan,* 8 S. & M. 624, is decisive of the one at bar. It decides that a mortgage is but an incident to the note it was designed to secure, and that if the original contract is void, all subsequent securities or agreements to carry out that contract are likewise void. *Bridge* v. *Hubbard,* 15 Mass. 96, is to the same effect. *Adams* v. *Rowan* is referred to and affirmed in 12 S. & M. 153. The mortgage here is a subsequent security or agreement to carry out a void contract, and is consequently of no force.

In Story on Promissory Notes, 203, § 185, it is said, that " a promissory note made by a woman who is *sole* to pay a debt, which she had previously contracted whilst she was married and under coverture, would not be valid, because such a contract on her part is *ab initio* void, and not merely voidable." This authority marks the distinction between void and voidable contracts. The latter may be confirmed, but the former cannot be. If the contract referred to by Judge Story could not be confirmed by a woman after the termination of her coverture, surely the mortgage of Mrs. Beatty, being made whilst she was still married and to secure a void note, must be invalid. The mortgage is but an incident to the note, and gives it no additional validity. 8 S. & M. 638; 10 Ib. 631; 3 U. S. Dig. 28, § 3.

The question, whether or not Mrs. Beatty shall return the

Franklin *v.* Beatty.

property for which the notes were given, cannot arise in this cause. The sole question is, Shall the mortgage be foreclosed? No other could be properly presented. The circuit court has chancery jurisdiction in cases of mortgages to any amount, but in other cases it is limited to the sum of five hundred dollars. The property in this suit would far exceed that sum. If an attempt was made to recover the specific property, it would not be under the mortgage, but on the ground that the contract was void, and that the mortgage was of no force; the court would thereby be deprived of jurisdiction, as the amount in controversy would exceed five hundred dollars.

The note of Mrs. Beatty being void, and therefore a contract that cannot be confirmed, it follows that the decree dismissing the bill is correct.

The case of *Fish* v. *James*, 9 S. & M. 152, referred to on the other side, is not an authority against the defendant. In that case there was a valid and binding debt to uphold the mortgage. In the case at bar the note was not executed by Mrs. Beatty's husband, but by her alone, and is therefore void. The mortgage is consequently not supported by a subsisting debt, and without consideration. If it had been executed to secure a note of Beatty, the husband, the case last referred to might be somewhat in point; but the note having been made by Mrs. Beatty alone, and on that account being no debt, that case has no application whatever to this suit.

Since the foregoing was written, several cases have been reported touching the contracts of married women. The first is *Mitchell* v. *Otey*, 1 Cushm. 236. That was a bill filed to subject the income and proceeds of a married woman's separate estate to the payment of a debt for plantation supplies, for which she was liable under the 4th section of the act of 1846, Hutch. Co. 498, and so held by the court. The decision is based upon that statute. It is not an authority against the defendant in error, because the debt for which she is sued is not such a one as she could make or create.

The second is *Boarman* v. *Groves*, 1 Cushm. 280. That was against a married woman for rent, mules, &c. She held her property under a marriage settlement in 1837, by which she had

full power and authority "to lease, sell convey, or otherwise dispose of" her property, and which was to remain subject to her debts. 2 Cush. 282. By this deed she reserved over her property all the power of a *feme sole*. Her power to bind her separate estate by debts or otherwise, was unquestionable. In the case at bar it is not alleged that Mrs. Beatty holds her property under a marriage settlement. In the absence of such an allegation it must be presumed that she holds it under the woman's law, as is the case. The debt was made since 1839. The law, then, is the deed, if I may so express myself, under which she claims. In *Doty* v. *Mitchell*, 9 S. & M. 435, it is decided that a married woman, as to her separate property, is a *feme sole* only so far as the instrument conferring the estate constitutes her a *feme sole*, and that in the disposition of such estate she is restricted to the mode or manner pointed out by the deed conferring the estate. If, then, Mrs. Beatty claims under the statute, she can sell her property or incumber it only in accordance with the statute. The note is not made in conformity with the provisions of that statute.

In *Robertson* v. *Brunner*, 2 Cushm. 242, it is decided that a note or bond made by a married woman is a nullity, and void; that she has power to buy supplies for her plantation, and to bind herself for such debts as are enumerated in the act; that all of her contracts not within the provisions of the statute are invalid. This case is utterly irreconcilable with the doctrine contended for by opposing counsel, that a note given by a married woman alone, is in equity a charge upon her separate estate.

Mr. Justice HANDY delivered the opinion of the court.

The plaintiff in error filed his bill on the equity side of the circuit court of Holmes county, to foreclose a mortgage executed by the defendant in error, a *feme covert*, and her husband, who died before the filing of the bill.

The bill states that the notes, to secure which the mortgage was made, were executed in the year 1841, by Mrs. Beatty alone, she being then married, and the owner of property in her own separate right; that she became indebted to the plaintiff

in error on account of that estate, and, in consideration thereof, executed the notes; and that afterwards, and in the year 1842, she jointly with her husband executed the mortgage on her separate property to secure the notes.

To this bill a general demurrer was filed, which was sustained, and the bill dismissed in the court below.

The principal point insisted upon here in support of the demurrer is, that the notes for which the mortgage was given, being executed alone by the wife, were void, and could not support the mortgage subsequently executed by the husband and wife.

It is true, that at law a *feme covert* is incapable of entering into any valid contract to bind either her person or estate, and that in equity she cannot bind her person or her property generally. But under the rules prevailing in a court of equity, she is regarded, in reference to her separate estate, as acting as a *feme sole.* Her liability in this respect is, however, held by this court to be so limited by the act of 1839, in relation to the rights of married women, that she can neither convey her separate property nor create any charge upon it, except by the joint deed of herself and her husband. *Frost* v. *Doyle,* 7 S. & M. 68. In that case a bill was filed in equity to obtain payment out of the separate property of the wife, of a promissory note made by the husband and wife; and the decision was that her separate estate was not chargeable for the payment of the debt. That case has been followed by several others, both at law and in equity, holding that under similar circumstances, the separate estate of the wife was not liable.

The feature in the present case which distinguishes it from those previously decided is, that a mortgage was executed by the husband and wife to secure the note previously made by her alone; and the question is, whether this note was a sufficient consideration to support the mortgage.

The contract of a *feme covert* is void by the common law. But it is not void to all intents and purposes. It is neither *malum prohibitum* nor *malum in se.* It may be founded on a good and valid consideration, entitling it, in all but its form, to the favorable consideration of a court of justice. In the form in

which it stands, it cannot be enforced; but the good and valuable consideration for which it was given, creates a moral obligation which will support a new promise founded on it made by her after she becomes a *feme sole*. *Lee* v. *Muggeridge*, 5 Taunt. 36; Chitty, Contr. 48, 49, (6th Am. edit.).

By the act of 1839, the promissory note of a *feme covert* is not placed in a worse condition for the holder than it was at common law. It is only incapable in that form of being enforced against her separate property. We have seen, that by the common law she could change the form of the obligation after the removal of her disability of coverture, and that the antecedent valid consideration would support the new promise. So under the act of 1839, her note is not void to all intents and purposes, but she has received the valuable consideration for which it was given. That act prescribes the mode in which she may charge or convey her separate estate; and if for a valuable and equitable consideration received by her, she has conveyed her estate in the manner prescribed in that act, we think the transaction valid and legal. She has the same power, under the act of 1839, by deed executed jointly with her husband, to make her previous contracts valid and available according to that act, that she would have at common law to make a new promise after the death of her husband to pay a debt contracted during coverture. This conclusion is plain, unless it can be maintained that the act of 1839 intended to prevent the wife from creating any charge upon her separate property, and to leave her only the power to sell it by the joint deed of her husband and herself. But this court has held that her right of charging her property exists, and that she may execute a mortgage jointly with her husband, to secure a debt of the husband. *Bacon* v. *Sessions*, 23 Miss. 272. This decision we think fully sustained by the statute. But if the rigid construction, upon which the objection under consideration is founded, be correct and well founded upon the reason that the statute intended to place the wife's property beyond all liability for his debts and all power on his part to charge it, the decision cannot be maintained. Doubtless this was the main object of the statute; and this is a sufficient reason for the opinion that the contracts of

the wife, founded on a just and equitable consideration received by her, should be enforced, if made in the manner prescribed by the statute.

The bill in this case alleges that the *feme covert* contracted the debts for which the mortgage was given on account of her separate estate, and this is admitted by the demurrer. It does not appear whether the separate property was held as such by deed, or under the provisions of the act of 1839. It is treated by counsel as the latter, and we have so considered it.

Under the view we take of the case, the demurrer was improperly sustained; and the decree is therefore reversed, and the cause remanded for further proceedings.